UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 5:21-cr-76-JA-PRL

EDDIE JOE OGLESBY, JR.
_____

**ORDER**

Today the Court held a hearing on the government's unopposed request for a status conference. (Doc. 71). At the outset of the hearing the government proffered that speedy trial would now elapse on October 11, 2022. Defense counsel had no objection to the government's calculation.

Previously, the government (Doc. 67) and the defense (Doc. 70) both requested a continuance from the September 2022 trial term. At the hearing today counsel agreed they would be ready to begin this trial on October 3, 2022 and expect it to last four to five days. It shall be set to commence on that day.

Also at today's hearing, the defendant, despite being represented, submitted a paper motion on his own behalf requesting the Court to either appoint his previous attorney to represent him or a new one. (Doc. 74). That motion is due to be denied.

The Court explained to the defendant what is set forth in *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir. 2008): "Although the Sixth Amendment guarantees counsel, it does not grant defendants the unqualified right to counsel of their choice." In other words, "[a]n indigent criminal defendant does not have a right to have a particular lawyer represent him, nor to demand a different appointed lawyer except for good cause." *Id.* (quotation and citation

omitted). With respect to good cause, the Eleventh Circuit has held that "in this context [it] means a fundamental problem, 'such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" *Id.* (citing *United States v. Young*, 482 F.2d 993, 995 (5th Cir.1973)). In the absence of good cause then, "defendants who lack the means to hire a private attorney must either accept the counsel appointed to represent them or represent themselves." *Id.* at 1264.

Here, the Defendant, has already received the benefit of new counsel. Now, as trial approaches, and dissatisfied with the outcome of his initial bond hearing and the results of two competency evaluations finding him competent to stand trial, he asks that counsel be changed again.

The Court addressed defense counsel who reported that while the defendant is sometimes unpleasant, counsel has no actual conflict with him, is prepared to proceed to trial on October 3, 2022, and has no reason not to represent him.

The Defendant is cautioned that "it is possible for a valid waiver of counsel to occur not only when a cooperative defendant affirmatively invokes his right to self-representation, but also when an uncooperative defendant rejects the only counsel to which he is constitutionally entitled, understanding his only alternative is self-representation with its many attendant dangers." *Id.* at 1265. The Defendant is also cautioned that self-created tension and refusal to cooperated with counsel could be construed as a desire to represent oneself as opposed to proceeding with otherwise conflict-free court appointed counsel. *Id.* at 1265-66 ("When a defendant rejects his court-appointed counsel or otherwise engages in behavior that creates tension between his right to counsel and his right to self-representation,

a district court does not compromise the defendant's free choice by presenting him with accurate information regarding his lawful choices and asking him to choose between them.").

In his written request, as well as the Court's direct conversation with him, the Defendant has two primary grievances with counsel. The first relates to the defendant's denial of a bond and the second to his competency. As to the first, the Defendant received a full bond hearing in this case. Because of the nature of the charges against him, the law creates a presumption (albeit a rebuttal one) of detention. While defense counsel argued for his release on a bond, the government (as stated at the bond hearing) presented significant evidence of a serious offense. That there was insufficient evidence to overcome the presumption of detention or otherwise defeat the governments showing that the Defendant is danger to the community is not a basis for the appointment of new counsel.

As to the second, the Defendant underwent two competency evaluations – one locally (Dr. Kropp) at the request of defense counsel and the other at a BOP facility, also at the request of defense counsel. The defendant doesn't complain that he was evaluated; rather, he complains that both doctors recommended a finding of competency. He makes unsubstantiated accusations against Dr. Kropp that are unfathomable (e.g., that Dr. Kropp told him "I don't believe a jury will find you guilty" and that "the evidence is very low") and afforded no weight. He also accuses clinical and forensic psychologist, Dr. Rodriquez, of telling him he was lying and faking before the exams were conducted. Those accusations are also unfathomable. Lastly, he complains that Dr. Rodriquez wasn't provided with his prior state records by his attorney, where he was allegedly found incompetent in prior state cases.

In his motion for a psychological evaluation, defense counsel cited the prior state court cases where the defendant was deemed incompetent, including an evaluation of his IQ. (Doc.

44). Defense counsel arranged for a local evaluation by Dr. Krop. (Doc. 49). In his report, Dr. Krop recites discussing the Defendant's mental health with defense counsel, reviewing his mental health history, noting prior evaluations and prior restoration, and noting after receiving a call from the defendant (who believed that if Dr. Krop found him incompetent he would be permitted to go home) that "Mr. Oglesby was informed that I was reviewing voluminous records provided by his attorney and that it was questionable as to whether he would be released even if I opined that he was ITP." (Dr. Kropp report at Doc. 53). It appears from Dr. Krop's report that the Defendant had many of the same concerns he's repeatedly expressed to the Court about losing his home if he remains incarcerated. After reviewing the records and evaluating the Defendant, Dr. Krop, a licensed psychologist, opined that the Defendant is competent to proceed.

In Dr. Rodriguez's report, which also recommended a finding of competency, she notes that she examined numerous documents, including pro se letters by Mr. Oglesby and a copy of defense counsel's motion for a psychological evaluation (which noted the Defendant's prior state court evaluations). Importantly, she recited the tests and procedures used to assess "Mr. Oglesby's mental state and *current* level of functioning." (Doc. 59, emphasis added). The question under 18 U.S.C. § 4241 of course is whether "the defendant is *presently* suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241 (emphasis added). Here, as reported by Dr. Rodriquez, the Defendant's current assessment was based on, among other things, clinical interviews, mental status examinations, an Evaluation of Competency to Stand Trial-Revised, Inventory of Legal Knowledge, Personality Assessment Inventory, and Test of Memory Malingering. She even

notes under his history that an evaluation from 2009 reported his IQ at 51, thought she notes she didn't have a copy of the actual report.

Ultimately, she finds, among other things, that the Defendant met the criteria for a classification of malingering, that he "did not display indications of a serious mental illness or defect during the course of the evaluation," that "[a]lthough the defendant attempted to present as intellectually disabled, the results of the current evaluation do not confirm the presence of an Intellectual Disability," that the "defendant's performance on measures of effort on cognitive testing concluded that he intended to misrepresent himself as cognitively impaired," that "correctional staff working on the unit where the defendant was housed reported that he exhibited no difficulties in communication, interactions, self-care, feeding, and other activities of daily living," and that his "independent functioning prior to his incarceration is not consistent with significant impairments in adaptive functioning." As previously noted, after extensive testing and a discussion of those results, she recommended he be found competent to proceed.

That the Defendant is frustrated with the results of two evaluations he asked his attorney to request doesn't create good cause to appoint new counsel. In the end, the Defendant recites his general dissatisfaction with the Court's bond and competency decisions and his general grievances with new counsel. He does not, however, set forth an actual conflict or present information sufficient to show good cause exists to consider yet another appointment.

Accordingly, because the Defendant presents no good cause in his pro se motion for the appointment of new counsel, his motion for one is **denied**. Counsel for Defendant shall

show him a copy of this Order. Of course, if good cause arises, Counsel should file an appropriate motion so stating it.

The trial is set to begin on **October 3, 2022**.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on August 30, 2022.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record